# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHERYL CROCHET and ALEXANDRIA CROCHET, individually and on behalf of decedent, CHRISTOPHER CROCHET** | **CIVIL ACTION**<br><br>**NO.** |
| **VERSUS** | **SECTION** |
| **SEADRILL AMERICAS, INC., ABC INSURANCE COMPANY, WEST NEPTUNE, FRANK'S INTERNATIONAL, LLC, DEF INSURANCE COMPANY, LLOG EXPLORATION COMPANY, LLC d/b/a LLOG BLUEWATER HOLDINGS, LLC, and XYZ INSURANCE COMPANY** | **JUDGE**<br><br>**MAGISTRATE** |

<u>**NOTICE OF REMOVAL**</u>

Defendants, Frank's International, LLC, LLOG Exploration Company, LLC, and Seadrill Americas, Inc. (collectively, "Defendants") file this Notice of Removal of this civil action to the United States District Court for the Eastern District of Louisiana and respectfully submit as follows:

### PENDING STATE COURT SUIT

1.      On March 16, 2022, Cheryl Crochet and Alexandria Crochet (collectively, together "plaintiffs") alleged survivors of decedent Cristopher Crochet ("Mr. Crochet" or "decedent") filed, individually and on behalf of decedent a civil action naming Frank's International, LLC ("Frank's International"), LLOG Exploration Company, LLC ("LLOG") allegedly d/b/a LLOG Bluewater Holdings, LLC, and Seadrill Americas, Inc. (Seadrill") as the defendants in Cause Number 2022-110584H, *Cheryl Crochet and Alexandria Crochet, individually and on behalf of decedent, Cristopher Crochet  v. Seadrill Americas, Inc., et al.* in the 22nd Judicial District Court for the Parish of St. Tammany, Louisiana.

EXHIBIT C

2. Plaintiffs' suit arises out of the death of Mr. Crochet aboard the WEST NEPTUNE (the "Vessel"), an ultra-deepwater drillship operated by Seadrill, on or about March 18, 2021.[1] At the time of the incident, the rig was located on the U.S. Outer Continental Shelf ("OCS") directly south of LaFourche Parish and Plaquemines Parish.[2] Specifically, plaintiffs allege that Mr. Crochet "died of heart attack" while he "was a Jones Act seaman employed by Frank's Oilfield Services, LLC," and "the Jones Act employee of Seadrill Americas and/or LLOG Exploration Company, LLC, and/or LLOG Bluewater Holdings LLC, assigned to the motor vessel WEST NEPTUNE."[3] As a result, plaintiffs' petition asserts claims of Jones Act, unseaworthiness, survival action under LSA-CC Art. 2315.1, wrongful death action under LSA-CC Art. 2315.2, and action under 33 U.S.C 905(b) against defendants.[4]

3. Plaintiffs allege that jurisdiction is proper in the Parish of St. Tammany district court pursuant to the Saving to Suitors clause, 28 U.S.C. § 1333, because Mr. Crochet allegedly was a Jones Act seaman.[5] However, as shown below, Mr. Crochet was not a Jones Act seaman. Furthermore, plaintiffs' claims fall under the Outer Continental Shelf Lands Act (the "OSCLA"), which gives federal district courts original jurisdiction. *See* 43 U.S.C. § 1349(b)(1) and 43 U.S.C. § 1333(a)(1)-(2). In addition, plaintiffs' *in rem* claims against the Vessel are removable because federal courts have original and exclusive jurisdiction over such claims, notwithstanding the Saving to Suitors exception to federal admiralty jurisdiction. *See Finney v. Bd. of Commissioners of Port of New Orleans,* No. CV 21-1186, 2021 WL 5905642, at *7–10 (E.D. La. Dec. 14, 2021). Accordingly, Plaintiffs' claims are removable under 28 U.S.C § 1441(a).

---

[1] *See* Plaintiffs' Petition for damages, at ¶ 5, attached hereto as Exhibit 1.
[2] *See* Declaration of Dewayne Arceneaux, attached hereto as Exhibit 2.
[3] Exhibit 1 at ¶¶4, 5.
[4] *Id.* at ¶¶ 8-13.
[5] *Id.* at ¶ 7.

## TIMING OF REMOVAL

4.      On March 16, 2022, Plaintiffs filed their Petition for Damages against defendants. As of this date, no defendant has been served.  Thus, pursuant to 28 U.S.C. 1446(b)(1), this Notice of Removal is timely because it was filed within 30 days of any service.

## REMOVAL JURISIDICTION

5.      A defendant has the right to remove a case to federal court when federal jurisdiction exists and when the removal procedure is properly followed. *See* 28 U.S.C. § 1441. Removal of this case is permitted because plaintiffs' Jones Act claim on behalf of Mr. Crochet was improperly pled. Additionally, under 28 U.S.C. § 1441(a), any state court civil action over which a federal court would have original jurisdiction may be removed from state to federal court. *See* 28 U.S.C. § 1441(a).  Removal of this case is, therefore, proper pursuant to 28 U.S.C. § 1441(a) because plaintiffs' claims fall under the OSCLA, which confers original jurisdiction upon this Court.[6]

### A.      Removal Is Permitted Because Cristopher Crochet Was Not a Jones Act Seaman

6.      When a plaintiff sues under the Jones Act, the defendant generally cannot remove. *Holmes v. Atl. Sounding Co.*, 437 F.3d 441, 445 (5th Cir. 2006), *abrogated on other grounds by Lozman v. City of Riviera Beach, Fla.*, 568 U.S. 115 (2013). If a Jones Act claim is improperly or "fraudulently" pled, however, the case is removeable. *Id.* A district court may use a "summary judgment-like procedure" to determine whether a Jones Act claim was fraudulently pled. *Id.* "The fact that Jones Act claims are ordinarily not removeable does not prevent this inquiry." *Lackey v. Atl. Richfield Co.*, 990 F.2d 202, 206 (5th Cir. 1993). Rather, "defendants are permitted to demonstrate that parties—or claims—are baseless in law and fact and serve only to frustrate federal

---

[6] While the facts of this case merit removal of the entire case, specifically plaintiffs' *in rem* claims against the Vessel are also removable under 28 U.S.C. § 1441. *See*, *Finney v. Bd. of Commissioners of Port of New Orleans,* No. CV 21-1186, 2021 WL 5905642, at *7–10 (E.D. La. Dec. 14, 2021).

jurisdiction." *Id.* To remove based on improperly pled claims, "[t]he removing party must show that there is no possibility that [the] plaintiff would be able to establish a cause of action." *Id.* at 207.

7.      To maintain a cause of action under the Jones Act, the plaintiff must be a seaman. *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 346 (5th Cir. 1999). "Under the Jones Act, a 'seaman' is a term of art for an employee whose duties 'contribut[e] to the function of the vessel or to the accomplishment of its mission' and who has 'a connection to a vessel in navigation . . . that is substantial in terms of both its duration and its nature.'" *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995). This two-part test distinguishes "sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation." *In re Endeavor Marine Inc*, 234 F.3d 287, 290 (5th Cir. 2000) (quoting *Chandris*, 515 U.S. at 368).

8.      Plaintiffs bear the burden of proof for establishing Mr. Crochet's seamen status. *Becker v. Tidewater, Inc.*, 335 F.3d 376, 390 (5th Cir. 2003). To satisfy the first element, a claimant must show that he "do[es] the ship's work." *Chandris*, 515 U.S. at 369. The second element, however, does not look to the employee's particular job but to "the employee's connection to a vessel." *McDermott Int'l Inc. v. Wilander*, 498 U.S. 337, 354 (1991). A seaman must have an employment-related connection to a vessel in navigation that is substantial in both duration and nature. *See Chandris*, 515 U.S. at 371.

> **1.      Mr. Crochet was not a seaman under the Jones Act because he did not have an employment connection with any vessel or fleet of vessels that was substantial in duration.**

9.      The Supreme Court "has approved the [Fifth Circuit's] rule of thumb as a guide to the degree of permanence required to satisfy the duration element. 'A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman

under the Jones Act.'" *Sanchez v. Smart Fabricators of Texas, L.L.C.*, 997 F.3d 564, 571 (5th Cir. 2021). *See also Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368 at 375 (5th Cir. 2001) ("We have left no doubt that the 30 percent threshold for determining substantial temporal connection must be applied, regardless of whether one vessel or several are at issue."). Indeed, "to be a seaman, [plaintiff] must show that he actually worked on a vessel [or fleet of vessels] *at least* 30% of the time." *Alexander v. Express Energy Servs. Operating, L.P.*, 784 F.3d 1032, 1037 (5th Cir. 2015) (emphasis added). "In deciding whether there is an identifiable group of vessels of relevance for a Jones Act seaman-status determination, the question is whether the vessels are subject to common ownership or control." *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 556-557 (1997). Additional factors that merit consideration under *Sanchez* are: "(1) Does the worker owe his allegiance to the vessel, rather than simply to a shoreside employer? (2) Is the work sea-based or involve seagoing activity? (3) (a) Is the worker's assignment to a vessel limited to performance of a discrete task after which the worker's connection to the vessel ends, or (b) Does the worker's assignment include sailing with the vessel from port to port or location to location?" *Sanchez,* 997 F.3d 574 (5th Cir. 2021).

10.     There is no possibility that plaintiffs can establish a Jones Act cause of action against any defendant because there is no possibility that Mr. Crochet qualified as a Jones Act seaman. Frank's International maintained detailed records regarding Mr. Crochet's work history,[7] including the dates Mr. Crochet worked, the location Mr. Crochet was tasked to work, the name and type of the specific rig, ship, or platform Mr. Crochet worked on, the operator and/or contractor

---

[7] Mr. Crochet was first hired by Frank's International as a Field Service Technician, II on March 27, 2000. Mr. Crochet remained in that role until May 24, 2017 at which point his employment with Frank's International ended. Mr. Crochet was then re-hired as a Shop Technician, II on September 7, 2017, where he continually worked on land. He was transferred to the field effective September 21, 2018. *See* Declaration of Dewayne Arceneaux at ¶4, attached hereto as Exhibit 2.

of each structure, and the number of hours Mr. Crochet worked.[8] The table below shows that

Crochet worked less than 30% of the time on any particular vessel or fleet of vessels under

common ownership or control:[9]

| DATE | STRUCTURE | LOCATION | FRANK'S CUSTOMER OPERATOR | HOURS SPENT | % OF TIME |
|---|---|---|---|---|---|
| 12/22/18 | WEST VELA | Drillship<br><br>https://www.seadrill.com/application/files/9715/7288/7957/west-vela.pdf | Seadrill Ltd. | 203.5 | 2% |
| 6/26/19-7/4/19<br>3/6/21-3/11/21 | WEST NEPTUNE | Drillship<br><br>https://www.seadrill.com/application/files/1815/9654/8023/West-Neptune.pdf | Seadrill Ltd. | 552.5 | 5% |
| 10/3/18-10/11/18<br>5/12/20-6/4/20 | TRANSOCEAN DEEPWATER PONTUS | Drillship<br><br>https://www.deepwater.com/documents/RigSpecs/Deepwater%20Pontus.pdf | Transoc. Ltd. | 890.5 | 8.6% |
| 8/22/19-9/5/19<br>11/25/19-12/5/19<br>2/26/20<br>8/13/20-8/28/20 | DEEPWATER PROTEUS | Drillship<br><br>https://www.deepwater.com/Documents/RigSpecs/Deepwater%20Proteus.pdf | Transoc. Ltd. | 1,133 | 11% |
| 10/5/19-10/10/19 | DEEPWATER THALASSA | Drillship<br>https://www.deepwater.com/Documents/RigSpecs/Deepwater%20Thalassa.pdf | Transoc. Ltd. | 180 | 1.7% |
| 11/5/19-11/7/19 | DEEPWATER POSEIDON | Drillship<br><br>https://www.deepwater.com/documents/RigSpecs/Deepwater%20Poseidon.pdf | Transoc. Ltd. | 200.5 | 1.95% |
| 10/23/18-10/25/18<br>1/24/19 | ROWAN RESOLUTE | Drillship<br><br>https://s1.q4cdn.com/651804090/files/docs_rigspecs/EnscoRowan/ROWAN_2 | Ensco Rowan | 452 | 4.4% |

[8] *See* Exhibit 2, at ¶¶ 5,6.
[9] *See* Exhibit 2, at ¶7.

6

| | | | | | |
|---|---|---|---|---|---|
| | | 02_RowanResolute.pdf | | | |
| 1/12/20-1/30/20 | ROWAN RELENTLESS | Drillship<br><br>https://s1.q4cdn.com/651804090/files/docs_rigspecs/EnscoRowan/ROWAN_204_RowanRelentless.pdf | Ensco Rowan | 707 | 7% |
| 3/22/19<br>1/18/20<br>11/19/20 | OCEAN BLACKLION | Drillship<br><br>https://www.riglynx.com/ocean-blacklion-renews-for-2-more-years-with-bp-in-the-gom | Diamond Offshore | 347.5 | 3.3% |
| 3/12/20-3/26/20 | OCEAN BLACKRHINO | Drillship<br><br>http://www.diamondoffshore.com/diamond-offshore-profile/ultra-deepwater-operations | Diamond Offshore | 741 | 7.2% |
| 4/12/20-4/23/20 | OCEAN BLACKHORNET | Drillship<br><br>http://www.diamondoffshore.com/diamond-offshore-profile/ultra-deepwater-operations | Diamond Offshore | 424.5 | 4% |
| 5/1/19-6/20/19 | TIMBALIER | Barge Rig<br><br>https://www.baywaterdrilling.com/rig/timbalier/ | Baywater Drilling | 901.5 | 8.8% |
| 11/19/18-12/6/18 | ENTERPRISE 264 | Drilling Vessel<br><br>https://enterpriseoffshore.com/wp-content/uploads/EOD264-Spec-Sheet-Rev-12-New-Version-Feb-8-2021.pdf | Enterprise Offshore Drilling | 512.5 | 5% |
| 11/13/18<br>6/24/20-7/13/20 | HELIXQ5000 | Vessel<br><br>https://helixesg.com/our-assets/q5000/ | Helix | 900.5 | 8.7% |
| 2/27/19-2/28/19 | PARKER 51B | Barge Rig<br><br>https://parkerwellbore.com/rigs/parker-rig-51b/ | Parker Drilling | 13.5 | Less than 1% |

PD.37254099.1

| | | | | | |
|---|---|---|---|---|---|
| 1/5/19 4/19/19 | SUPER SUNDOWNER XIV | Platform workover rig https://www.nabors.com/for-operators/offshore-rigs/sundowner/ | Nabors Offshore | 232.02 | 2.2% |
| 8/10/19-8/15/19 | WEST CAPRICORN | Semi-submersible drilling rig https://www.seadrill.com/application/files/2915/7288/7943/west-capricorn.pdf | LLOG | 197 | 2% |
| 4/4/19-4/11/19 | MAD DOG | Platform https://www.valaris.com/our-fleet/managed-platforms/default.aspx | Ensco Rowan | 160.5 | 1.5% |
| 2/11/19-2/14/19 | HOLSTEIN | Platform https://www.offshore-technology.com/projects/holstein/ | Anadarko | 593 | 5.7% |
| 2/13/20 12/7/20-12/17/20 | THUNDER HORSE | Platform https://www.offshore-technology.com/projects/crazy_horse/ | BP PLC and Exxon Mobile joint venture | 465.5 | 4.5% |
| 8/4/20-8/5/20 | N/A | Lafayette, LA | Frank's | 12 | Less than 1% |
| 9/21/20-10/21/20 | N/A | Ascension Parish, LA | Cust. - Dow Chemical | 192 | 2% |
| 11/30/20 1/29/21 | N/A | Iberville Parish, LA | Cust. - WSP USA INC | 179.5 | 2% |
| 3/2/21-3/3/21 | N/A | Iberville Parish, LA | Cust. - Texas Brine Co LLC | 48 | Less than 1% |

**Total hours: 10,239.52**

8

Specifically, from his transfer from land-based work on September 21, 2018, to offshore work until March 18, 2021, Mr. Crochet worked a total of 10,239.52 hours for Frank's International, of which:

a) 1,650.5 hours or 16% of his time was on land and/or platforms,

b) 8,589.02 hours or 84% of his time was on various vessels, barge rigs, drill ships, drilling vessels, and/or semi-submersible rigs that were not under any common ownership or control. Of his offshore work, 953 hours were hours Mr. Crochet worked on Seadrill owned and/or controlled and/or operated vessels, or 9% of his time.[10]

As such, Mr. Crochet was not a Jones Act seaman. *See Roberts*, 266 F.3d at 377 (worker spent approximately 28% of his time assigned to a fleet of vessels by a common owner and was not a Jones Act seaman); *Moore v. Universal Sodexho U.S.*, No. H-08-3633, 2010 U.S. Dist. LEXIS 161404 (S.D. Tex. Jan. 2, 2010) (worker spent only 24% of his time on any one vessel and was not a seaman); *Skinner v. Schlumberger Tech. Corp.*, No. 13-3146, 2014 U.S. Dist. LEXIS 24685 (W.D. La. Feb. 25, 2014), *aff'd* 655 Fed. App. 188 (5th Cir. 2016) (worker who spent 19% of time on one vessel and 22% of time on fleet of vessels did not meet the substantial connection requirement); *Washington v. Blanchard Contrs., Inc.*, No. H-08-1806, 2009 U.S. Dist. LEXIS 34749 (S.D. Tex. April 24, 2009) (Lake, J.) (worker who spent 16% of time on vessel did not have substantial connection). Accordingly, because Mr. Crochet did not meet the duration element of the seaman status test, defendants are not prohibited from removing plaintiffs' case to federal court.

---

[10] The remaining hours that Mr. Crochet worked on vessels, barge rigs, drill ships, drilling vessels, and/or semi-submersible rigs are as follows: Transocean: 2,404 hours or 23%, Ensco/Rowan: 1,159 hours or 13%, Diamond Offshore: 1,513 hours or 15%, Baywater Drilling: 901.5 hours or 9%, Enterprise Offshore Drilling: 512.5 hours or 5% , Helix: 900.5 hours or 9%, Parker Drilling: 13.5 hours or less than 1% of his time, Nabors Offshore: 232.02 hours or 2%.

> **2.** **Mr. Crochet was not a seaman under the Jones Act because he did not have an employment connection with the Vessel that was substantial in nature.**

11.     The overarching purpose of the Jones Act, as declared in *McDermott Intern., Inc. v. Wilander*, is to confine Jones Act and other seaman's remedies "to the members of the crew of a vessel plying in navigable waters," with shoreside workers to receive "only such rights to compensation as are given by the [LHWCA]." 498 U.S. at 347. Thus, "[f]or the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea." *Papai*, 520 U.S. 555 (1997).

12.     In distilling further the principles from the Supreme Court's jurisprudence on seaman status, the *en banc* Fifth Circuit in *Sanchez* rejected the "perils of the sea" inquiry and established the following three factors to be considered:  "(1) Does the worker owe his allegiance to the vessel, rather than simply to a shoreside employer? (2) Is the work sea-based or involve seagoing activity? (3) (a) Is the worker's assignment to a vessel limited to performance of a discrete task after which the worker's connection to the vessel ends, or (b) Does the worker's assignment include sailing with the vessel from port to port or location to location?" *Sanchez,* 997 F.3d 574 (5th Cir. 2021).

13.     A worker's connection with a vessel is not substantial in nature if he is merely a temporary visitor and not a permanently assigned crew member, for Congress never intended workers with a transient and sporadic relationship to be entitled to Jones Act relief. *See Gardner v. Fieldwood Energy LLC*, No. H-18-0841, 2019 U.S. Dist. LEXIS 28649, **7, 13 (S.D. Tex. Jan. 30, 2019) (mem. op.). Indeed, the employees of contractors who perform transient work on a drilling vessel between voyages are not seamen as a matter of law. *See, e.g., Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368 (5th Cir. 2001); *Ardleigh v. Schlumberger Ltd.*, 832 F.2d 933 (5th Cir.

1987); *Lirette v. N.L. Sperry Sun, Inc.*, 831 F.2d 554 (5th Cir. 1987); *Langston v. Schlumberger Offshore Servs., Inc.*, 809 F.2d 1192 (5th Cir. 1987).

14.     Mr. Crochet was the type of worker that Congress wished to exclude from the remedies afforded under the Jones Act; a transient, third-party contractor who had no connection to the Vessel that was substantial in nature. At the time of the alleged incident, Mr. Crochet was an employee of Frank's International. Frank's International's employees, including Mr. Crochet, are employees of a third-party contractor who travel to the location identified by Frank's International's clients, perform the limited and discrete services requested, and depart from the location when the service is completed.[11]

15.     On March 6, 2021, LLOG—an oil and exploration company—requested that Frank's International perform a completions project aboard the Vessel.[12] To perform its services for LLOG, Frank's International employees, including Mr. Crochet, travelled to the Vessel and arrived on or about March 8, 2021.[13] After the limited and discrete tasks requested by LLOG were completed, the Frank's International employees were to return shoreside.[14] At no point was there any seagoing activity whereby Frank's International employees, including Mr. Crochet, traveled while aboard the Vessel. Instead, all the work performed by Frank's International's crew, including Mr. Crochet, on the Vessel was while it was connected to the seabed and subsoil.[15] The Frank's International employees were not permanently assigned to the Vessel but were sent temporarily aboard to perform the temporary work for LLOG, Frank's International's customer.[16] Accordingly, Mr. Crochet was a transient, land-based worker who did not have a substantial connection to the

---

[11] *See* Exhibit 2, Declaration of Dewayne Arceneaux, at ¶ 11.
[12] *Id.* at ¶ 9.
[13] *Id.* at ¶ 10.
[14] *Id.* at ¶ 11.
[15] *Id*. at ¶ 12.
[16] *Id.*

11

Vessel that was substantial in nature. Plaintiff was, therefore, not a Jones Act seaman, and defendants are not prevented from removing the above-referenced case to this Court.

**B.**     **Seadrill and LLOG were not Mr. Crochet's Borrowing Employers**

16.     Plaintiffs are also not entitled to relief under the Jones Act because Seadrill and LLOG were not Mr. Crochet's borrowing employers. The Jones Act only confers upon a seaman the right to sue his employer for negligence resulting in his personal injury. *See* 46 U.S.C. § 30104 (emphasis added). Thus, the Jones Act is applicable only if an employment relationship exists. *See id.*

17.     The borrowed employee doctrine is the "functional rule that places the risk of a worker's injury on his actual rather than his nominal employer." *Baker v. Raymond Intern., Inc.*, 656 F.2d 173, 178 (5th Cir. 1981). When deciding whether a person qualifies as a borrowed employee, courts should consider the following factors:

a.   Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?

b.   Whose work is being performed?

c.   Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

d.   Did the employee acquiesce in the new work situation?

e.   Did the original employer terminate his relationship with the employee?

f.   Who furnished the tools and place for performance?

g.   Was the new employment over a considerable length of time?

h.   Who had the right to discharge the employee?

i.   Who had the obligation to pay the employee?

*Brown v. Union Oil Co.*, 984 F.2d 674, 676 (5th Cir. 1993) (citing *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir. 1969)). "No single factor, or combination of them, is determinative[,]" but the Fifth

12

Circuit has considered control to be the central factor. *Id.* (citing *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1244 (5th Cir. 1988)).

18.     All of the factors weigh against Seadrill and LLOG being Mr. Crochet's borrowing employer. Specifically, Mr. Crochet was supervised by Collin Thibodeaux and Jessie Courville, Frank's International employees, who served as the supervisors of the Frank's International crew working aboard the Vessel.[17] Mr. Thibodeaux had overall direction of the Frank's International employees' work and had oversight over the operative details for each Frank's International work crew.[18] Thus, Frank's International had ultimate control over Mr. Crochet's actions—not the Seadrill or LLOG.

19.     Furthermore, at all material times, Frank's International was performing work for LLOG under Master Service Contract ("MSC").[19] There was a meeting of the minds between Frank's International and LLOG regarding Frank's International's work. Specifically, the MSC between LLOG and Frank's International states that the work performed by Frank's International will be that of an independent contractor.[20]

20.     Moreover, Frank's International employed Mr. Crochet for the duration of his time aboard the Vessel and was the sole entity who had the right to discharge him from his employment with Frank's International.[21] Frank's International provided its own equipment for the work Mr. Crochet performed on the Vessel, and he did not need to use any of Seadrill's or LLOG's tools or equipment to complete the task Frank's International employees were hired to perform on the Vessel.[22] As such, Frank's International was Mr. Crochet's employer at the time of the incident,

---

[17] *See* Exhibit 2, at ¶ 13(i).
[18] *Id.*
[19] *See* Exhibit 2, at ¶ 9.
[20] *Id.* at ¶ 13(vi).
[21] *Id.* at ¶ 13(v),(ix).
[22] *Id.* at ¶ 12(vi).

and neither Seadrill nor LLOG served as Mr. Crochet's borrowing employer during the time Mr. Crochet performed work aboard the Vessel.

## C.     Removal Is Proper Because Plaintiffs' Claims Arise Under the OSCLA

21.     Pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), this Court has original jurisdiction over "cases and controversies arising out of, or in connection with . . . any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf . . .". 43 U.S.C. § 1349(b)(1); *see also* 43 U.S.C. § 1333(a)(1)-(2). Indeed, "OCSLA *explicitly provides* that district courts have federal question jurisdiction over claims occurring on the Outer Continental Shelf." *Barker*, 713 F.3d at 220 (emphasis in original) (citing 43 U.S.C. § 1333(a)(1)).

22.     The OCSLA jurisdictional grant is liberally interpreted and "covers not only cases arising geographically on the OCS but also over cases arising 'in connection with' operations thereon." *Sam v. Laborde Marine, L.L.C.*, No. H-19-4041, 2020 WL 59633, at *2 (S.D. Tex. 2020) (Lake, J.) (quoting 43 U.S.C. § 1349(b)(1)); *see also In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 401 (2014). The Fifth Circuit applies "a but-for test" for determining the existence of OCSLA jurisdiction, asking "whether: (1) the activities that caused the injury constituted an 'operation' 'conducted on the Outer Continental Shelf that involved the exploration and production of minerals', and (2) the case 'arises out of, or in connection with' the operation." *In re Deepwater Horizon*, 745 F.3d at 163.  Both of these requirements for jurisdiction under OCSLA are satisfied here.

### 1.     The activities that allegedly caused Mr. Crochet's passing furthered the exploration and production of minerals on the OCS.

23.     Plaintiffs allege that Mr. Crochet passed away occurred while he was assigned to the Vessel, which was operating in navigable waters of the United States in the Gulf of Mexico off

the coast of Louisiana.[23] On the date of the incident, the Vessel was involved in oil and gas drilling operations on the outer Continental Shelf ("OCS").[24] These operations included plug and abandonment work.[25] Specifically, the Vessel was in the process of cutting and removing 13' 3/8 casing.[26]

24.     The Vessel was located above the OCS at Green Canyon Block-97 off the coast of Louisiana at the following coordinates: 27º50'39.4" N, 91º29'1.3" W.[27] Specifically, the Vessel was directly connected to the OCS seabed by a drill pipe/riser connected to the BOP, which was connect to the wellhead that was connected to the casing. The casing was in contact with the seabed and subsoil and extended miles into the formation below the seabed and it was positioned on the OCS sea floor.[28] The Vessel was, therefore, geographically located on the OCS and was engaged in operations involving exploration and production of minerals on the OCS. *See* H.R. Rep. No. 95-590, at 128 (1977) (stating that the OCSLA is to be applicable to "activities on *drilling ships, semi-submersible drilling rigs, and other watercraft, when they are connected to the seabed by drillstring, pipes, or other appurtenances*, on the OCS for exploration, development, and production.") (emphasis added).

25.     Furthermore, Frank's International, Mr. Crochet's employer, is a global oil services company that provides a broad and comprehensive range of highly engineered tubular services to leading exploration and productions companies in both offshore and onshore environments, with a focus on complex and technically demanding wells.[29] Frank's International was hired to perform

---

[23] *See* Exhibit 1, plaintiffs' petition for damages, at ¶ 4.
[24] *See*  Declaration of Michael James Brooks, at ¶ 4, attached hereto as Exhibit 3.
[25] *Id.* at ¶ 5.
[26] *Id.* at ¶ 6.
[27] *Id*. at ¶ 4.
[28] *Id.* at ¶ 6.
[29] See Exhibit 2, at  ¶ 9.

15

a completions project aboard the Vessel.[30] Plaintiffs allege that Mr. Crochet passed while he was assigned to the Vessel.[31] Accordingly, Mr. Crochet's passing occurred while he worked as part of Frank's International crew and to provide casing services, i.e. an activity in furtherance of mineral development on the OCS. *See Hufnagel v. Omega Serv. Indus., Inc.,* 182 F.3d 340, 350 (5th Cir.1999).

### 2. Plaintiffs' claims clearly arise out of operations conducted on the OCS.

26.     Plaintiffs' claims would not have arisen but for oil and gas drilling operations on the Vessel and for the need of Frank's International services provided to its customer LLOG, which assisted in the exploration and production of oil and gas on the OCS. Indeed, if Mr. Crochet had not been tasked to work on the Vessel, he would not have been there when he passed. *Hubbard v. Laborde Marine LLC*, 2014 WL 12776414 (E.D. La. 2014) ("Plaintiff would not have been aboard the M/V RIG RUNNER but-for the extraction of minerals from the OCS. Accordingly, his injuries are sufficiently related to the operations on the OCS for this Court to exercise jurisdiction"). As such, OCSLA jurisdiction exists over this case based on the two-part test applied in the Fifth Circuit, and the case is properly removable on that basis.

### PROCEDURAL REQUIREMENTS ARE SATISFIED

27.     Pursuant to 28 U.S.C. § 1446(d), defendants are simultaneously filing written notice of this removal with the Clerk of Court for the 22nd Judicial District Court for the Parish of St. Tammany, Louisiana the district where the state court action is currently pending. Defendants will also give plaintiffs prompt written notice of this Notice of Removal by serving copies of the Notice of Filing Notice of Removal, together with this Notice of Removal, upon plaintiffs' counsel.

28.     Additionally, the United States District Court for the Eastern District of Louisiana

---

[30] *Id.* at ¶ 8.
[31] *See* Exhibit 1, Petition for Damages at ¶ 4.

includes the county in which the state court action is now pending. This Court is, therefore, a proper venue for removal of this action pursuant to 28 U.S.C. §§ 124(c)(6) and 1441(a).

29.     Furthermore, pursuant to Local Rule 3.2 for the Eastern District of Louisiana and 28 U.S.C. §1447(b), defendants attach the following to this removal:

    a.  A list of all parties remaining in this action is attached is Exhibit 4;

    b.  Copies of all pleadings, including answers, filed in state court;

       Plaintiffs' petition for damages, attached as Exhibit 1, is the only pleading on the state court's docket as of the filing of this notice.

    c.  Copies of the return of service of process filed in state court on those parties.

       As of the filing of this Notice, no defendant has been served.

### CONCLUSION AND PRAYER

For the foregoing reasons, Frank's International, LLC, LLOG Exploration Company, LLC, and Seadrill Americas, Inc. respectfully ask this Court to accept this Notice of Removal as good and sufficient, remove the above-described action from the 22nd Judicial District of Parish of St. Tammany to the United States District Court for the Eastern District of Louisiana, for trial and determination as provided by law, take jurisdiction of this action to its conclusion or final judgment to the exclusion of any further proceedings in the state court, and grant Frank's International, LLC, LLOG Exploration Company, LLC, and Seadrill Americas, Inc. such other and further relief, in law or in equity, to which it may be justly entitled.

Respectfully submitted,

**PHELPS DUNBAR LLP**


BY:    */s/ Evans Martin McLeod*
                Evans Martin McLeod, (Bar #24846)
                Justin C. Warner, (Bar #37349)
                Magdalini Galitou, (Bar #38473)
                Canal Place | 365 Canal Street, Suite 2000
                New Orleans, Louisiana 70130-6534
                Telephone: 504-566-1311
                Telecopier: 504-568-9130
                marty.mcleod@phelps.com
                justin.warner@phelps.com
                magdalini.galitou@phelps.com


ATTORNEYS FOR FRANK'S
INTERNATIONAL, L.L.C., LLOG
EXPLORATION COMPANY, LLC AND
SEADRILL AMERICAS, INC.

PD.37254099.1

CHERYL CROCHET and ALEXANDRIA
CROCHET, individually and on behalf of
decedent, CHRISTOPHER CROCHET

VERSUS

SEADRILL AMERICAS, INC., ABC
INSURANCE COMPANY, WEST
NEPTUNE, FRANK'S INTERNATIONAL,
LLC, DEF INSURANCE COMPANY, LLOG
EXPLORATION COMPANY, LLC d/b/a
LLOG BLUEWATER HOLDINGS, LLC,
and XYZ INSURANCE COMPANY

22ND JUDICIAL DISTRICT COURT

DOCKET NO. 2022-11058-H

**FILED**

MAR 2 1 2022

PARISH OF ST. TAMMANY

MELISSA R. HENRY - CLERK
Deputy *Sandra Burris*
Sandra Burris, Deputy Clerk

STATE OF LOUISIANA

---

## PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, CHERYL CROCHET, a person of

the full age of majority and resident of Vermilion Parish, Louisiana, who is the widow and

beneficiary of the decedent, CHRISTOPHER CROCHET, and ALEXANDRIA CROCHET a

person of the full age of majority and resident of Vermilion Parish, Louisiana, who is the biological

daughter and beneficiary of the decedent, CHRISTOPHER CROCHET, who with respect

represent:

1.

Made Defendants herein are:

A.    SEADRILL AMERICAS, INC., a foreign corporation licensed to do and doing
      business in the State of Louisiana which at all times pertinent hereto was the owner
      of the vessel *WEST NEPTUNE*; and, by reason and belief, at all pertinent times
      herein, decedent's Jones Act employer;

B.    ABC INSURANCE COMPANY, a foreign insurer licensed to do and doing
      business within the State of Louisiana, which at all times relevant herein provided
      coverage for the liabilities of SEADRILL AMERICAS, INC.;

C.    *WEST NEPTUNE*, a vessel which was owned and/or operated SEADRILL
      AMERICAS, INC. and at all pertinent times herein was a vessel in navigable
      waters;

D.    FRANK'S INTERNATIONAL, LLC, a foreign corporation licensed to do and
      doing business within the Parish of Lafayette, State of Louisiana, which at all times
      herein by reason and belief was decedent's Jones Act employer;

E.    DEF INSURANCE COMPANY, a foreign insurer licensed to do and doing
      business within the State of Louisiana, which at all times relevant herein provided
      coverage for the liabilities of FRANK'S INTERNATIONAL, LLC;

F.    LLOG EXPLORATION COMPANY d/b/a LLOG BLUEWATER HOLDINGS,
      LLC, a foreign corporation licensed to do and doing business in the State of
      Louisiana which at all times pertinent hereto was the operator of the vessel *WEST
      NEPTUNE;* and, at all pertinent times herein, decedent's Jones Act employer; and,

Received @ STPCOC
on 3/21/22 SB

1 of 6

FAX

MAR 1 6 2022

FILED



EXHIBIT
1

G.    XYZ INSURANCE COMPANY, a foreign insurer licensed to do and doing business within the State of Louisiana, which at all times relevant herein provided coverage for the liabilities of LLOG EXPLORATION COMPANY d/b/a LLOG BLUEWATER HOLDINGS, LLC.

2.

The accident that is the subject of this lawsuit occurred both upon the high seas and in the navigable waters of the U.S.A. off the coast of Louisiana aboard the marine vessel *WEST NEPTUNE*.

3.

At all times material hereto, including the date of his death, on or about March 18, 2021 decedent, CHRISTOPHER CROCHET, was an adult male who is survived by his wife, Cheryl Crochet, and biological daughter, Alexandria Crochet.

4.

On or about March 18, 2021, decedent, CHRISTOPHER CROCHET, was a Jones Act seaman employed by Franks Oilfield Services, LLC, and, by information and belief, was the Jones Act employee of SEADRILL AMERICAS and/or LLOG EXPLORATION COMPANY, LLC and/or LLOG BLUEWATER HOLDINGS, LLC, assigned to the motor vessel *WEST NEPTUNE*, which was operating in navigable waters of the United States in the Gulf of Mexico off the coast of Louisiana.

5.

On or about March 18, 2021, decedent, CHRISTOPHER CROCHET, died of a heart attack when Defendants' employees and other supervisors employed by defendants, failed to provide CROCHET with medical treatment despite hours and hours of having knowledge of CROCHET's deteriorating medical condition and  CROCHET's multiple requests for same.

6.

Plaintiff suffered for hours with the symptoms which defendants knew or should have known was evidence of cardiac distress, for which he requested immediate and urgent medical assistance which was denied to him. After suffering for hours and having reported his rapidly deteriorating medical condition to the crew of the *WEST NEPTUNE*, defendants' inaction caused the plaintiff to die of cardiac arrest as no first aid was administered nor was any action taken whatsoever to transport Mr. Crochet to a medical facility for treatment of his condition.

7.

As a Jones Act seaman, petition has a right to pursue all of his claims in state court pursuant to the Savings to Suitors Clause, 28 U.S.C. § 1333. Further, plaintiff brings this claim pursuant to the law of admiralty, and exercises any and all rights available to petitioner under state law and, in the alternative, the LHWCA.

8.

The above described incident resulted solely from the fault and/or negligence of Defendant, SEADRILL AMERICAS, INC., in the following non-exclusive particulars:

    A. In failing to provide a safe workplace on the *M/V WEST NEPTUNE*;

    B. Failure to maintain the *M/V WEST NEPTUNE* in a safe and prudent fashion

    C. Failure to train employees and workers to work on the *M/V WEST NEPTUNE* in a safe and prudent manner;

    D. In failing to provide medical care;

    E. In failing to have proper medical personnel available for contract workers upon its platforms;

    F. In disregarding rules and regulations created for the safety of employees working on said platform.

9.

The above described incident resulted solely from the fault and/or negligence of Defendant, FRANK'S INTERNATIONAL, LLC, in the following non-exclusive particulars:

    A. In failing to provide a safe workplace on the *M/V WEST NEPTUNE*;

    B. Failure to maintain the *M/V WEST NEPTUNE* in a safe and prudent fashion

    C. Failure to train employees and workers to work on the *M/V WEST NEPTUNE* in a safe and prudent manner;

    D. In failing to provide medical care;

    E. In failing to have proper medical personnel available for contract workers upon its platforms;

    F. In disregarding rules and regulations created for the safety of employees working on said platform.

10.

The above described incident resulted solely from the fault and/or negligence of Defendant, LLOG EXPLORATION COMPANY d/b/a LLOG BLUEWATER HOLDINGS, LLC, in the following non-exclusive particulars:

 A. In failing to provide a safe workplace on the *M/V WEST NEPTUNE*;

 B. Failure to maintain the *M/V WEST NEPTUNE* in a safe and prudent fashion

 C. Failure to train employees and workers to work on the *M/V WEST NEPTUNE* in a safe and prudent manner;

 D. In failing to provide medical care;

 E. In failing to have proper medical personnel available for contract workers upon its platforms;

 F. In disregarding rules and regulations created for the safety of employees working on said platform.

11.

Plaintiffs, as the representatives of the decedent's estate, assert a survival action under LSA-CC Art. 2315.1, for pre-death damages including:

 A. Pain;

 B. Physical suffering;

 C. Mental anguish;

 D. Emotional suffering;

 E. Funeral expenses for the burial of Christopher Crochet; and,

 F. Other damages allowed by Louisiana and federal law.

12.

Plaintiffs, as the representatives of the decedent's estate, further assert individual wrongful death actions under LSA-CC Art. 2315.2, for loss of:

 A. Love;

 B. Affection;

 C. Society;

 D. Companionship;

 E. Consortium; and,

 F. Loss of inheritance

G.    Other recoverable damages by Louisiana and federal law.

13.

Alternatively, petitioner asserts all claims for damages and allegations of negligence listed above under Louisiana state law, 33 U.S.C. 905(b), and/or any other applicable state or federal law.

WHEREFORE, Petitioners, CHERYL CROCHET and ALEXANDRIA CROCHET, individually and on behalf of decedent, CHRISTOPHER CROCHET as the representatives of the decedent's estate, pray that a certified copy of this Petition be served upon Defendants, SEADRILL AMERICAS, INC., ABC INSURANCE COMPANY, *WEST NEPTUNE,* FRANK'S INTERNATIONAL, LLC, DEF INSURANCE COMPANY, LLOG EXPLORATION COMPANY d/b/a LLOG BLUEWATER HOLDINGS, LLC, and XYZ INSURANCE COMPANY, and that after due proceedings are had there be judgment herein in favor of Petitioner, CHERYL CROCHET and ALEXANDRIA CROCHET, individually and on behalf of decedent, CHRISTOPHER CROCHET as the representatives of the decedent's estate and against Defendants, SEADRILL AMERICAS, INC., ABC INSURANCE COMPANY, *WEST NEPTUNE,* FRANK'S INTERNATIONAL, LLC, DEF INSURANCE COMPANY, LLOG EXPLORATION COMPANY d/b/a LLOG BLUEWATER HOLDINGS, LLC, and XYZ INSURANCE COMPANY, jointly, severally and *in solido* in a sum reasonable in the premises together with legal interest from the date of judicial demand until paid and for all costs of these proceedings.

Respectfully submitted,

BROUSSARD & DAVID, LLC

JEROME H. MOROUX (#32666)
SCOTT M. RICHARD (#36643)
557 Jefferson Street
P.O. Box 3524
Lafayette, Louisiana 70502-3524
PH: 337-233-2323
FX: 337-233-2353
EMAIL: jerome@broussard-david.com
EMAIL: scott@broussard-david.com
COUNSEL FOR PLAINTIFFS

*(service info on page 6 of 6)*

**_WITHHOLD_ SERVICE:**

SEADRILL AMERICAS, INC.

_WEST NEPTUNE_

FRANK'S INTERNATIONAL, LLC

LLOG EXPLORATION COMPANY, LLC

LLOG BLUEWATER HOLDINGS, LLC

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHERYL CROCHET and ALEXANDRIA CROCHET, individually and on behalf of decedent, CHRISTOPHER CROCHET | CIVIL ACTION<br><br>NO. |
| VERSUS | SECTION |
| SEADRILL AMERICAS, INC., ABC INSURANCE COMPANY, WEST NEPTUNE, FRANK'S INTERNATIONAL, LLC, DEF INSURANCE COMPANY, LLOG EXPLORATION COMPANY, LLC d/b/a LLOG BLUEWATER HOLDINGS, LLC, and XYZ INSURANCE COMPANY | JUDGE<br><br>MAGISTRATE |

## DECLARATION OF DEWAYNE ARCENEAUX

I, Dewayne Arceneaux, declare under 28 U.S.C. § 1746 that the following is true and correct.

1.    I am the Operations Manager at Frank's International LLC ("Franks International") in Louisiana. I have been employed by Frank's International since December 1, 1992. In that capacity I have gained personal knowledge of the business operations and business records of Frank's International as well as its employment of Christopher Crochet discussed in this declaration.

2.    I am over 18 years of age, of sound mind, and am in all respects capable of making this declaration. The facts stated herein are true and correct, and are either within my personal knowledge, and/or as may be derived from business records in the possession of Franks International, and/or or from information available or supplied to me from within Frank's International and/or by its employees.

3.    Frank's International is a global oil services company that provides a broad and comprehensive range of highly engineered tubular services to leading exploration and productions companies in both offshore and onshore environments, with a focus on complex and technically demanding wells. These services include tubular running services, cementing technologies, tubular products and services, drilling technologies, well intervention and integrity services, and well flow management services as requested by Frank's International's various clients. When requested, Frank's International's employees travel to the location identified by Frank's International's client, perform the services requested and, when completed, depart the work location and await the next assignment.

PD.37254199.1



EXHIBIT
2

4.  Frank's International first hired Christopher Crochet as a Field Service Technician, II on March 27, 2000. Mr. Crochet remained in that role until May 24, 2017 at which point his employment with Frank's International ended. Mr. Crochet was then re-hired as a Shop Technician, II on September 7, 2017, where he continually worked on land. He was transferred to the field effective September 21, 2018, wherein he began to work primarily offshore, Gulf of Mexico.

5.  Frank's International maintains records of Mr. Crochet's work history with Frank's International, including the dates worked, the locations worked, the rig, ship, or platform name, the number of days worked, and the percentage of his overall time.

6.  Below is a detail description of Mr. Crochet's work history with Frank's International from September 21, 2018, when he first began to work offshore in the Gulf of Mexico, until March 18, 2021, when he became deceased:

| DATE | STRUCTURE | LOCATION | FRANK'S CUSTOMER OPERATOR | HOURS SPENT | % OF TIME |
|---|---|---|---|---|---|
| 12/22/18 | WEST VELA | Drillship https://www.seadrill.com/application/files/9715/7288/7957/west-vela.pdf | Seadrill Ltd. | 203.5 | 2% |
| 6/26/19-7/4/19 3/6/21-3/18/21 | WEST NEPTUNE | Drillship https://www.seadrill.com/application/files/1815/9654/8023/West-Neptune.pdf | Seadrill Ltd. | 552.5 | 5% |
| 10/3/18-10/11/18 5/12/20-6/4/20 | TRANSOCEAN DEEPWATER PONTUS | Drillship https://www.deepwater.com/documents/RigSpecs/Deepwater%20Pontus.pdf | Transoc. Ltd. | 890.5 | 8.6% |
| 8/22/19-9/5/19 11/25/19-2/26/20 8/13/20-8/28/20 | DEEPWATER PROTEUS | Drillship https://www.deepwater.com/Documents/RigSpecs/Deepwater%20Proteus.pdf | Transoc. Ltd. | 1,133 | 11% |
| 10/5/19-10/10/19 | DEEPWATER THALASSA | Drillship https://www.deepwater.com/Documents/RigSpecs/Deepwater%20Thalassa.pdf | Transoc. Ltd. | 180 | 1.7% |
| 11/5/19-11/7/19 | DEEPWATER POSEIDON | Drillship https://www.deepwater.com/documents/RigSpecs/Deepwater%20Poseidon.pdf | Transoc. Ltd. | 200.5 | 1.95% |

| 10/23/18-10/25/18 1/24/19 | ROWAN RESOLUTE | Drillship<br><br>https://s1.q4cdn.com/651804090/files/docs_rigspecs/EnscoRowan/ROWAN_202_Rowan Resolute.pdf | Ensco Rowan | 452 | 4.4% |
|---|---|---|---|---|---|
| 1/12/20-1/30/20 | ROWAN RELENTLESS | Drillship<br><br>https://s1.q4cdn.com/651804090/files/docs_rigspecs/EnscoRowan/ROWAN_204_Rowan Relentless.pdf | Ensco Rowan | 707 | 7% |
| 3/22/19 1/18/20 11/19/20 | OCEAN BLACKLION | Drillship<br><br>https://www.riglynx.com/ocean-blacklion-renews-for-2-more-years-with-bp-in-the-gom | Diamond Offshore | 347.5 | 3.3% |
| 3/12/20-3/26/20 | OCEAN BLACKRHINO | Drillship<br><br>http://www.diamondoffshore.com/diamond-offshore-profile/ultra-deepwater-operations | Diamond Offshore | 741 | 7.2% |
| 4/12/20-4/23/20 | OCEAN BLACKHORNET | Drillship<br><br>http://www.diamondoffshore.com/diamond-offshore-profile/ultra-deepwater-operations | Diamond Offshore | 424.5 | 4% |
| 5/1/19-5/23/19 6/6/19-6/20/19 | TIMBALIER | Barge Rig<br><br>https://www.baywaterdrilling.com/rig/timbalier/ | Baywater Drilling | 901.5 | 8.8% |
| 11/19/18-12/6/18 | ENTERPRISE 264 | Drilling Vessel<br><br>https://enterpriseoffshore.com/wp-content/uploads/EOD264-Spec-Sheet-Rev-12-New-Version-Feb-8-2021.pdf | Enterprise Offshore Drilling | 512.5 | 5% |
| 11/13/18 6/24/20-7/13/20 | HELIXQ5000 | Vessel<br><br>https://helixesg.com/our-assets/q5000/ | Helix | 900.5 | 8.7% |
| 2/27/19-2/28/19 | PARKER 51B | Barge Rig<br><br>https://parkerwellbore.com/rigs/parker-rig-51b/ | Parker Drilling | 13.5 | Less than 1% |
| 1/5/19 4/19/19 | SUPER SUNDOWNER XIV | Platform workover rig<br><br>https://www.nabors.com/for-operators/offshore-rigs/sundowner/ | Nabors Offshore | 232.02 | 2.2% |

| 8/10/19-8/15/19 | WEST CAPRICORN | Semi-submersible drilling rig  https://www.seadrill.com/application/files/2915/7288/7943/west-capricorn.pdf | LLOG | 197 | 2% |
|---|---|---|---|---|---|
| 4/4/19-4/11/19 | MAD DOG | Platform  https://www.valaris.com/our-fleet/managed-platforms/default.aspx | Ensco Rowan | 160.5 | 1.5% |
| 2/11/19-2/14/19 | HOLSTEIN | Platform  https://www.offshore-technology.com/projects/holstein/ | Anadarko | 593 | 5.7% |
| 2/13/20 12/7/20-12/17/20 | THUNDER HORSE | Platform  https://www.offshore-technology.com/projects/crazy_horse/ | BP PLC and Exxon Mobile joint venture | 465.5 | 4.5% |
| 8/4/20-8/5/20 | N/A | Lafayette, LA | Frank's | 12 | Less than 1% |
| 9/21/20-10/21/20 | N/A | Ascension Parish, LA | Cust. - Dow Chemical | 192 | 2% |
| 11/30/20-1/29/21 | N/A | Iberville Parish, LA | Cust. - WSP USA INC | 179.5 | 2% |
| 3/2/21-3/3/21 | N/A | Iberville Parish, LA | Cust. - Texas Brine Co LLC | 48 | Less than 1% |

**Total hours: 10,239.52**

7.  As shown in the table above, from his transfer from land-based work on September 21, 2018, to offshore work until March 18, 2021, Crochet worked a total of 10,239.52 hours for Frank's International, of which:

   a)  1,650.5 hours or 16% of his time was on land and/or platforms,

   b)  8,589.02 hours or 84% of his time was on various vessels, barge rigs, drill ships, drilling vessels, and/or semi-submersible rigs that were not under any common ownership or control. Of his offshore work, 953 hours were hours Mr. Crochet worked on Seadrill owned and/or controlled and/or operated vessels, or 9% of his time.[1]

---

[1] The remaining hours that Mr. Crochet worked on vessels, barge rigs, drill ships, drilling vessels, and/or semi-submersible rigs are as follows: Transocean: 2,404 hours or 23%, Ensco/Rowan: 1,159 hours or 13%, Diamond

8.     I now understand that Cheryl Crochet and Alexandria Crochet, survivors of, now, decedent Mr. Crochet, have filed lawsuits against Seadrill Americas, Inc., ABC Insurance Company, WEST NEPTUNE, Frank's International, LLC, DEF Insurance Company, LLOG Exploration company d/b/a/ as LLOG Bluewater Holdings, LLC for the natural death of Mr. Crochet on or about March 18, 2021, while working for Frank's International on the WEST NEPTUNE.

9.     Relevant to this matter, Frank's International entered into a Master Service Contract with LLOG Exploration Company, LLC, LLOG Exploration Offshore, LLC, LLOG Explorations & Production Company, LLC, and LLOG Exploration Texas, L.P. (collectively together "LLOG"). On March 6, 2021, LLOG requested that Frank's International perform a completions project aboard the Seadrill drillship WEST NEPTUNE. This work was expected to last 15 days, following which Mr. Crochet would return to shore.

10.     To perform its services for LLOG, Frank's International employees, including Mr. Crochet, travelled to the WEST NEPTUNE and arrived on or about March 8, 2021. Mr. Crochet became deceased on the WEST NEPTUNE on March 18, 2021, or 10 days later.

11.     After Frank's International and its employees completed the discrete work tasks requested by LLOG to be performed on the WEST NEPTUNE, Frank's International intended they would return shoreside.

12.     The Frank's International employees were not permanently assigned to the WEST NEPTUNE and did not own their allegiance to the WEST NEPTUNE. Instead, the employees were sent temporarily aboard the WEST NEPTUNE to perform limited and discrete work for only LLOG, Frank's International's customer. Frank's International did not intend that:

        i.    its employees including Mr. Crochet would stay aboard or continue with the WEST NEPTUNE beyond the specific job for LLOG;

       ii.   its employees including Mr. Crochet would travel with the WEST NEPTUNE if, or as, it moved from place to place;

      iii.   its employees including Mr. Crochet would perform work for customers of the WEST NEPTUNE's operator other than LLOG, Frank's International's own customer; and

      iv.   its employees including Mr. Crochet would become the borrowed or alternate employees of any other company.

Instead, all of Mr. Crochet's work on the WEST NEPTUNE was performed while it was jacked-up and connected to the seabed and subsoil, such that it did not include any seagoing

---

Offshore: 1,513 hours or 15%, Baywater Drilling: 901.5 hours or 9%, Enterprise Offshore Drilling: 512.5 hours or 5% , Helix: 900.5 hours or 9%, Parker Drilling: 13.5 hours or less than 1% of his time, Nabors Offshore: 232.02 hours or 2%.

activity. Frank's International expected that Mr. Crochet would return shoreside after Frank's International's discrete and limited tasks were completed aboard the WEST NEPTUNE as the Frank's International employees' work locations depend on the needs of Frank's International's customers. Mr. Crochet never sailed from port to port or location to location with the WEST NEPTUNE.

13.     With respect to Mr. Crochet's work aboard the WEST NEPTUNE:

   i.   Mr. Crochet was supervised by Frank's International employee, Collin Thibodeaux/Jessie Courville, who served as the supervisors of the Frank's International crew working aboard the WEST NEPTUNE. Mr. Thibodeaux had overall direction of the Frank's International employee's work and had oversight over the operative details for each Frank's International work crew.

   ii.  LLOG requested that Frank's International perform work aboard the WEST NEPTUNE and Mr. Crochet's work aboard the WEST NEPTUNE was to fulfill LLOG's request.

   iii. Frank's International is a party to an Master Service Contract with LLOG, which states that the work done by Frank's International will be that of an independent contractor.

   iv.  I am not aware that Mr. Crochet ever advised any Frank's International personnel that he believed he was employed by any company other than Frank's International during his work board the WEST NEPTUNE.

   v.   Frank's International employed Mr. Crochet for the duration of his time aboard the WEST NEPTUNE.

   vi.  Frank's International typically provides its own equipment for the work it performs. For this particular job, Frank's International provided a variety of its own equipment. I am not aware that Mr. Crochet utilized any of the WEST NEPTUNE's equipment to perform his work while onboard.

   vii. Frank's International records show Mr. Crochet was aboard the WEST NEPTUNE from March 8, 2021 until March 18, 2021.

   viii. Only Frank's International had the right to discharge Mr. Crochet from his employment with Frank's International.

   ix.  Only Frank's International had an obligation to pay Mr. Crochet for his work aboard the WEST NEPTUNE. Frank's International did pay Mr. Crochet for that work.

14.     Frank's International records indicate the nature of Mr. Crochet's work aboard the WEST NEPTUNE was consistent in nature with the work he performed for Frank's International during the entire term of his employment.

I declare under penalty of perjury and the laws of the United States of America that the foregoing is true and correct.

Executed on April 22, 2022.

DEWAYNE ARCENEAUX

## DECLARATION OF MICHAEL JAMES BROOKS

1. I am over 18 years of age, of sound mind, and am in all respects capable of making this declaration. I have personal knowledge regarding the matters declared herein.

2. I am employed by Seadrill Americas, Inc. as the Rig Manager of the WEST NEPTUNE.

3. Because of my duties and responsibilities as the Rig Manager of the WEST NEPTUNE, and my review of Seadrill's records, I have personal knowledge of the WEST NEPTUNE's location and operations on March 18, 2021.

4. On March 18, 2021, the WEST NEPTUNE was located on the U.S. Outer Continental Shelf ("OCS") in Green Canyon Block-97 off the coast of Louisiana at the following coordinates: 27°50'39.4"N, 91°29'1.3"W. *See* ECDIS EBL Kongsberg Log and map collectively attached to this Declaration as Exhibit A.

5. On March 18, 2021, the WEST NEPTUNE was involved in oil and gas drilling operations on the OCS. These operations included plug and abandonment work. *See* March 18, 2021 IADC Report attached to this Declaration as Exhibit B.

6. On March 18, 2021, as part of the oil and gas drilling operations, the WEST NEPTUNE was in the process of cutting and removing 13' 3/8" casing. *See* Exhibit B. At all times on March 18, 2021, the WEST NEPTUNE was connected to the seabed and subsoil. Riser pipes extended down from the WEST NEPTUNE 4,000-plus feet where the riser pipes were connected to the BOP. *See* Exhibit B. The BOP was connected to the wellhead and the wellhead was connected to the casing. *See* Exhibit B. The casing was in contact with the seabed and subsoil and extended miles into the formation below the seabed. *See* Exhibit B

7. I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 13, 2022.

Michael James Brooks, Declarant

**EXHIBIT**

**3**

EXHIBIT A



EXHIBIT A

**DAILY DRILLING REPORT**    Rig No: 2317    **Job:** NEP-21-01    **Rpt No:** 14    **Date:** 18-Mar-21

| LEASE | WELL NO. | API WELL NUMBER | WATER DEPTH | DATE |
|---|---|---|---|---|
| OCSG-21785 | SS002 ST00 BP01 | 60-811-40514-01 | 4,826 | 18-Mar-21 |

| OPERATOR | CONTRACTOR | RIG NO. |
|---|---|---|
| LLOG Exploration Offshore LLC | Seadrill | 2317 |

| SIGNATURE OF OPERATOR'S REPRESENTATIVE | SIGNATURE OF CONTRACTOR'S TOOLPUSHER |
|---|---|
| John Telano | Donald Cason |

| DP SIZE | WEIGHT | GRADE | TOOL JT OD | THREAD TYPE | STRING NO. | PUMP NO. | PUMP MANUFACTURER | TYPE | STROKE |
|---|---|---|---|---|---|---|---|---|---|
| 5.000 | 19.5 | S-135 | 3.500 | 5" | 1 | 1 | NOV - National Oil | 14-P-220 | 14.0 |
| 6.625 | 34.0 | S-135 | 4.250 | 6.625FH | 3 | 2 | NOV - National Oil | 14-P-220 | 14.0 |
| | | | | | | 3 | NOV - National Oil | 14-P-220 | 14.0 |
| | | | | | | 4 | NOV - National Oil | 14-P-220 | 14.0 |

## TIME DISTRIBUTION - HOURS

| CODE-OPERATION | T1 | T2 |
|---|---|---|
| 1. Rig move between location | | |
| 2. Drilling | | |
| 3. Reaming | | |
| 4. Coring | | |
| 5. Circulating and conditionin | 3.50 | 1.00 |
| 6. Tripping | 7.00 | 7.50 |
| 7. Service rig | 0.50 | |
| 8. Repair rig | 0.50 | |
| 9. Slip & cut drilling line | | |
| 10. Survey | | |
| 11. Wireline logs | | |
| 12. Run casing and cement | | 3.50 |
| 13. Wait on cement | | |
| 14. Running riser / nipple up | | |
| 15. Test BOP | | |
| 16. Drill stem test | | |
| 17. Plug back | | |
| 18. Squeeze cement | | |
| 19. Fishing | | |
| 20. Directional work | | |
| 21. Waiting on weather | | |
| 22. Well control | | |
| 23. Others | | 0.50 |
| A. Completion - Perforatin | | |
| B. Completion - Tubing tr | | |
| C. Completion - Treating | | |
| D. Completion - Swabbin | | |
| E. Completion - Testing | | |
| F. Completion - Additiona | | |
| G. Others 1 | | |
| H. Others 2 | | |
| TOTALS | 12.00 | 12.00 |

| DAYWORK TIME SUMMARY (OFFICE USE ONLY) | | |
|---|---|---|
| HOURS W/ CONT. D.P. | | |
| HOURS W/ OPR. D.P. | | |
| HOURS WITHOUT D.P. | | |
| HOURS STANDBY | | |

| | | |
|---|---|---|
| TOTAL DAYWORK | 0.00 | 0.00 |
| NO. OF DAYS FROM SPUD | | 0 |
| CUMULATIVE ROTATING HOURS | | 4 |
| DAILY MUD COST ($) | | 0.00 |
| TOTAL MUD COST ($) | | 0.00 |

### TOUR 1

#### DRILLING ASSEMBLY

| NO. | ITEM | O.D. | LENGTH |
|---|---|---|---|
| 1 | OTHER | 12.180 | 81.30 |
| 11 | STD. D.P. | 5.000 | 1,510.19 |
| | SNG. D.P. | 5.000 | |
| | KELLY DOWN | | 26.51 |
| | TOTAL | | 1,618.00 |
| | WT. OF STRING | | 220,000 |

#### BIT RECORD

| | |
|---|---|
| BIT NO. | |
| SIZE | |
| IADC CODE | |
| MANUFACT. | |
| TYPE | |
| SERIAL NO. | |
| JETS | |
| TFA | |
| DEPTH OUT | |
| DEPTH IN | |
| TOTAL DRILL | |
| TOTAL HRS | |

| CUTTING STRUCTURE | | | |
|---|---|---|---|
| INNER | OUTER | DULL CHAR. | LOCATION |
| BEARINGS SEALS | GAUGE | OTHER DULL | REASON PULLED |

#### MUD RECORD

| | |
|---|---|
| TIME | 06:00 |
| WEIGHT | 12.50 |
| GRADIENT | 0.6488 |
| VISCOSITY | |
| PV/YP | / |
| GELS | / |
| FL. LOSS | |
| pH | |
| SOLIDS | |

| MUD & CHEMICALS ADDED | | | |
|---|---|---|---|
| TYPE | AMT. | TYPE | AMT. |

REMARKS: No incidents reported. No pollution reported. Held pre-tour safety meeting. Function Crown/Floor saver with block. Function Manual and Auto chokes. Function 6 5/8" FH and FOSV and IBOP, left in open position. Function DP alert lights. ROV inspected riser and BOP, Obtain bullseye readings: Flex- 0° @ 0°, LMRP- 0.5° @ 100°, BOP- 0° @ 0°. Fluid losses to well this tour 0 bbls, total fluid losses 381 bbls.

DRILLER: John C. Davis

### TOUR 2

#### COMPLETION / DRILLING ASSEMBLY

| NO. | ITEM | O.D. | LENGTH |
|---|---|---|---|
| 1 | PCK | 12.680 | 12.68 |
| 11 | STD. D.P. | 6.625 | 1,483.22 |
| 1 | SNG. D.P. | 6.625 | 44.81 |
| | KELLY DOWN | | 10.00 |
| 1 | TOTAL | | 1,550.71 |
| | WT. OF STRING | | 225,000 |

#### BIT RECORD

| | |
|---|---|
| BIT NO. | |
| SIZE | |
| IADC CODE | |
| MANUFACT. | |
| TYPE | |
| SERIAL NO. | |
| JETS | |
| TFA | |
| DEPTH OUT | |
| DEPTH IN | |
| TOTAL DRILL | |
| TOTAL HRS | |

| CUTTING STRUCTURE | | | |
|---|---|---|---|
| INNER | OUTER | DULL CHAR. | LOCATION |
| BEARINGS SEALS | GAUGE | OTHER DULL | REASON PULLED |

#### MUD RECORD

| | |
|---|---|
| TIME | 18:00 |
| WEIGHT | 12.50 |
| GRADIENT | 0.6488 |
| VISCOSITY | |
| PV/YP | / |
| GELS | / |
| FL. LOSS | |
| pH | |
| SOLIDS | |

| MUD & CHEMICALS ADDED | | | |
|---|---|---|---|
| TYPE | AMT. | TYPE | AMT. |

REMARKS: No incidents reported. No pollution reported. Held pre-tour safety meeting. Function Crown/Floor saver with block. Function Manual and Auto chokes. Function 6 5/8" FH and FOSV and IBOP, left in open position. Function DP alert lights. Fluid losses to well this tour 0 bbls, total fluid losses 381 bbls. Note: At 2000 hrs Toolpusher initiated TRIP Drill with B-Crew personnel while RIH with test plug on 5" DS 50 string w/ CIBP, simulate gain in trip tank. Simulated increase in flow & abnormal gain in trip tank. Driller alert drill crew to secure well (15 sec.), lower drill string & set slips (60 sec.) Install safety valve in open position (60 sec.), close safety valve (15 sec.), pick up drill string and close upper annular (115 s

DRILLER: Raymond Johnson

---

**IADC OFFICIAL DAILY DRILLING REPORT FORM**
FORM PRODUCED UNDER
LICENSE FROM IADC

Generated by RIMDrill Drilling Information System
Copyright 2016 International Association of Drilling Contractors

EXHIBIT B

**DAILY DRILLING REPORT**   **Rig No:** 2317   **Job:** NEP-21-01   **Rpt No:** 14   **Date:** 18-Mar-21

---

### Tour 2 Remarks  (Continued...)

No incidents reported. No pollution reported. Held pre-tour safety meeting. Function Crown/Floor saver with block. Function Manual and Auto chokes. Function 6 5/8" FH  and 5" FOSV and IBOP, left in open position. Function DP alert lights. ROV inspected riser and BOP, Obtain bullseye readings: Flex- 0° @ 0°, LMRP-0.5° @ 100°, BOP- 0° @ 0°. Fluid losses to well this tour 0 bbls, total fluid losses 381 bbls.

---

### Operations Activities (Continued...)

No incidents reported. No pollution reported. Held pre-tour safety meeting. Function Crown/Floor saver with block. Function Manual and Auto chokes. Function 6 5/8" FH  and 5" FOSV and IBOP, left in open position. Function DP alert lights.  Fluid losses to well this tour 0 bbls, total fluid losses 381 bbls. Note: At 2000 hrs Toolpusher initiated TRIP Drill with B-Crew personnel while RIH with test plug on 5" DS 50 string w/ CIBP, simulate gain in trip tank. Simulated increase in flow & abnormal gain in trip tank. Driller alert drill crew to secure well (15 sec.) , lower drill string & set slips (60 sec.) Install safety valve in open position (60 sec.) , close safety valve (15 sec.) , pick up drill string and close upper annular (115 sec), Simulated opening choke fail safe valve to montior pressure build, (60 secs) verify  choke manifold / trip tank line-up above closed BOP,Well secure 5 Mins 25 sec, Total Drill time 8 mins 20 secs. Held de-brief with all personnel & verify all line-ups back in Tripping requirements.• Return safety valve to  open and key ready.
Notified BSEE and Coast Guard of Non work related Death.

---

**IADC OFFICIAL DAILY DRILLING REPORT FORM**
FORM PRODUCED UNDER
LICENSE FROM IADC

Generated by RIMDrill Drilling Information System
Copyright 2016 International Association of Drilling Contractors

EXHIBIT B

**DAILY DRILLING REPORT**  **Rig No:** 2317  **Job:** NEP-21-01  **Rpt No:** 14  **Date:** 18-Mar-21

| FIELD/DISTRICT | Green canyon | | COUNTY | | | STATE | LA | | WIRE LINE RECORD | | REEL NO. 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

| LAST CASING TUBING OR LINER | SIZE | MAKE | WT & GRADE | JOINTS | LENGTH | RKB CSG. HD. | SET AT |
|---|---|---|---|---|---|---|---|

| SIZE | 2.000 | NO. LINES | 16 | LENGTH SLIPPED | |
|---|---|---|---|---|---|
| LENGTH CUT OFF | | | | PRESENT LENGTH | 4,350 |
| WEAR OR TRIPS SINCE LAST CUT | 6830 | | | | |
| CUMULATIVE WEAR OR TRIPS | 317350 | | | | |

| DEPTH INTERVAL | | DRILL REAM CORE | CORE NO. | FORMATION (SHOW CORE RECOVERY) | ROTARY TABLE SPEED | WT. ON BIT | PUMP PRESS | PUMP LINER SIZE | SPM | PUMP LINER SIZE | SPM | PUMP LINER SIZE | SPM | PUMP LINER SIZE | SPM | TOTAL PUMP OUTPUT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FROM | TO | | | | | | | | | | | | | | | |

| DEVIATION RECORD | DEPTH | DEV. | DIR. | TVD | HORIZ DISP. | DEPTH | DEV. | DIR. | TVD | HORIZ DISP. | DEPTH | DEV. | DIR. | TVD | HORIZ DISP. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| | TIME LOG | | ELAPSED TIME | CODE NO. | DETAILS OF OPERATIONS IN SEQUENCE AND REMARKS |
|---|---|---|---|---|---|
| | FROM | TO | | | |
| | 00:00 | 01:00 | 1.00 | 6 | MAIN: POOH w/ hanger running tool F/ 1,685' T/ RKB. Pass tool to Aux rotary. |
| | 01:00 | 01:30 | 0.50 | 6 | MAIN: RIH w/ Spring loaded tool BHA F/ RKB T/ 543' |
| | 01:30 | 02:00 | 0.50 | 8 | MAIN: Replace tong die retention bolt and chase threads on MW HT.Synergy report # 1500385 |
| TOUR 1 | 02:00 | 02:30 | 0.50 | 6 | MAIN: TIH w/ SLT F/ 543' T/ 1,533' |
| | 02:30 | 04:00 | 1.50 | 6 | MAIN: M/U TDX, obtain P/U 220k, S/O 216k. TIH to 1,618' bit depth, Land SLT in wellhead @ 1,074' w/ 32k down. Close LAP, Pull hanger seals with 21k overpull. Swap to UAP, sweep BOP down kill line taking returns through Gas bleed valves @ 10 BPM w/ 1,000 psi. observe 865 units of gas. Shut down pumps, flow check on choke line, observe no flow. Sweep BOPs again @ 10 BPM, observe 1,150 units gas, no mud cut. Shut down, flow check, observe no flow. Sweep BOPs @ 2 BPM observe 150 units gas, no mud cut. Increase rate to 10 BPM observe 560 units of gas. At 250 units of gas, shut down pumps, flow check on choke line, observe no flow. |
| | 04:00 | 04:30 | 0.50 | 6 | MAIN: Open UAP, flow check well on trip tank. Static. |
| | 04:30 | 05:00 | 0.50 | 6 | MAIN: Circulate riser volume @ 5 BPM down drill pipe w/ 85 psi, Boosting riser @ 20 BPM w/ 500 psi, max gas observed, 1,270 units with mud cut to 11.7 ppg. |
| | 05:00 | 05:30 | 0.50 | 6 | MAIN: Flow check static, Slug pipe. POOH F/1,618' T/1,533'. Change out handling equipment from 6.625" to 5". |
| | 05:30 | 06:30 | 1.00 | 6 | MAIN: POOH @ controlled rate F/1,533' T/RKB. |
| | 06:30 | 07:00 | 0.50 | 7 | MAIN: Service main well TDX and dolly. |
| | 07:00 | 07:30 | 0.50 | 6 | MAIN: P/u 13 3/8" casing cutter F/RKB T/81' . M/u TDX and open cutter with 3 BPM, 80 psi. |
| | 07:30 | 08:30 | 1.00 | 6 | MAIN: TIH with 13 3/8" casing cutter F/81' T/1,618'. Land marine swivel in wellhead with 10k down. |
| | 08:30 | 09:00 | 0.50 | 23 | MAIN: Establish parameters, cut 13 3/8" casing @ 1,610' @ 6 BPM, 1,000 psi, 80 rpm, 8k tq. Observe torque and pressure drop when cut. |

| DEPTH INTERVAL | | DRILL REAM CORE | CORE NO. | FORMATION (SHOW CORE RECOVERY) | ROTARY TABLE SPEED | WT. ON BIT | PUMP PRESS | PUMP LINER SIZE | SPM | PUMP LINER SIZE | SPM | PUMP LINER SIZE | SPM | PUMP LINER SIZE | SPM | TOTAL PUMP OUTPUT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FROM | TO | | | | | | | | | | | | | | | |

| DEVIATION RECORD | DEPTH | DEV. | DIR. | TVD | HORIZ DISP. | DEPTH | DEV. | DIR. | TVD | HORIZ DISP. | DEPTH | DEV. | DIR. | TVD | HORIZ DISP. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| | TIME LOG | | ELAPSED TIME | CODE NO. | DETAILS OF OPERATIONS IN SEQUENCE AND REMARKS |
|---|---|---|---|---|---|
| | FROM | TO | | | |
| | 12:00 | 12:30 | 0.50 | 6 | MAIN: TIH F/RKB T/177' with 13 3/8" casing grapple. |
| | 12:30 | 13:00 | 0.50 | 6 | MAIN: TIH F/177' T/1,085'. Spear into 13 3/8" casing. Observe 32k increase in wt. |
| | 13:00 | 13:30 | 0.50 | 5 | MAIN: Establish circulation down work string at 4 BPM with 60 psi. Boost riser @ 19 BPM with 400 psi. Max gas 724 units with gas cut mud @ 12.1ppg. |
| TOUR 2 | 13:30 | 14:00 | 0.50 | 6 | MAIN: Flow check, well static. Pump slug |
| | 14:00 | 15:00 | 1.00 | 6 | MAIN: POOH with FISH F/ 1,609' T/ 537'. |
| | 15:00 | 15:30 | 0.50 | 6 | MAIN: Rig down rotary bushings. Install Franks 13 3/8 casing slips . Set casing in slips and release grapple from fish. |
| | 15:30 | 16:30 | 1.00 | 6 | MAIN: Rig up Franks single joints and tongs. L/D 13 3/8" casing hanger F/ 537' T/ 517'. Rig up Franks elevators. |
| | 16:30 | 18:30 | 2.00 | 12 | MAIN: Held PJSM. L/D 13 3/8" casing F/517' T/ RKB. |
| | 18:30 | 20:00 | 1.50 | 12 | MAIN: R/D Franks Casing equipment from main well rotary. R/D Franks service loops from derrick. |
| | 20:00 | 20:30 | 0.50 | 6 | MAIN: R/U 5" handling equipment. P/U HES cleanout assembly RIH to 142' |
| | 20:30 | 21:30 | 1.00 | 6 | MAIN: TIH w/ cleanout assembly F/ 142' T/ 1,600' |
| | 21:30 | 22:00 | 0.50 | 5 | MAIN: Circulate bottoms up @ 1,600' 12 BPM w/ 800 psi. Boost @ 12 BPM w/ 175 psi. Max gas 395 units, no mud cut. |
| | 22:00 | 22:30 | 0.50 | 6 | MAIN: Flow check, Slug pipe. POOH F/ 1,600' T/ 1,490'. Change handling equipment from 6 5/8" to 5". |
| | 22:30 | 23:00 | 0.50 | 6 | MAIN: POOH F/ 1,490' T/ RKB. |
| | 23:00 | 00:00 | 1.00 | 6 | MAIN: RIH F/RKB T/1,495' @ 2 min/stand with 16" CIBP. |

**IADC OFFICIAL DAILY DRILLING REPORT FORM**
FORM PRODUCED UNDER
LICENSE FROM IADC

Generated by RIMDrill Drilling Information System
Copyright 2016 International Association of Drilling Contractors

EXHIBIT B

**DAILY DRILLING REPORT**     **Rig No:** 2317     **Job:** NEP-21-01          **Rpt No:** 14                    **Date:** 18-Mar-21

| Tour 1 Operations Activities  (Continued...) | | | | |
|---|---|---|---|---|

| TIME LOG | | ELAPSED | CODE | DETAILS OF OPERATIONS IN SEQUENCE AND REMARKS |
|---|---|---|---|---|
| FROM | TO | TIME | NO. | |
| 09:00 | 09:30 | 0.50 | 6 | MAIN: Perform flow check, well static pump slug. |
| 09:30 | 10:30 | 1.00 | 6 | MAIN: POOH with 13 3/8" casing cutter F/1,618' T/RKB. |
| 10:30 | 12:00 | 1.50 | 5 | MAIN: Boost riser @ 19 BPM, 441 psi. Max gas 1,570 units, LMC 11.7 ppg. Mud wt in and out 12.5 ppg. |

**IADC OFFICIAL DAILY DRILLING REPORT FORM**
**FORM PRODUCED UNDER**
**LICENSE FROM IADC**

Generated by RIMDrill Drilling Information System
Copyright 2016 International Association of Drilling Contractors

EXHIBIT B

**DAILY DRILLING REPORT**    **Rig No:** 2317    **Job:** NEP-21-01    **Rpt No:** 14    **Date:** 18-Mar-21

## Other Operations

| TIME LOG FROM | TO | ELAPSED TIME | CODE NO. | DETAILS OF OPERATIONS IN SEQUENCE AND REMARKS |
|---|---|---|---|---|
| | | | | **AUX OPERATIONS (24.00 hrs):** |
| 00:00 | 12:00 | 12.00 | 23 | Assist main side as needed. Perform first line maintenance and general housekeeping. P/U casing cutter assembly. P/U casing grapple assembly. L/D SLT assembly. |
| 12:00 | 00:00 | 12.00 | 23 | Assist main side as needed. Perform first line maintenance and general housekeeping. |

**IADC OFFICIAL DAILY DRILLING REPORT FORM**
FORM PRODUCED UNDER
LICENSE FROM IADC

Generated by RIMDrill Drilling Information System
Copyright 2016 International Association of Drilling Contractors

EXHIBIT B

**DAILY DRILLING REPORT**  Rig No: 2317  Job: NEP-21-01  **Rpt No:** 14  **Date:** 18-Mar-21

### DRILLING CREW PAYROLL DATA

DATE  18-Mar-21

WELL NAME & NO.  NEP-21-01--UDEEPWTR-Abandonment, SS002 ST00 BP01

COMPANY  Seadrill

TOOLPUSHER  Donald Cason,  RIG NO.  2317

**1 TOUR**  FROM  00:00  TO  12:00  INJURED

| CREW | EMPL. ID NO. | NAME | HRS | INIT-IAL | Y/N | CREW | EMPL. ID NO. | NAME | HRS | INIT-IAL | Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|
| AB Seaman | 487033 | Miguel Garcia | 12 | | N | Roustabout | 596986 | Luis Dubon | 12 | | N |
| Assistant Crane Op | 508506 | Shane Harris | 12 | | N | Roustabout | 589226 | Hunter Ford | 12 | | N |
| Assistant Driller | 489492 | Kenneth Baughman | 12 | | N | Roustabout | 488499 | Robert Morales | 12 | | N |
| Assistant Driller | 489589 | Jay Bertrand | 12 | | N | Senior DPO | 492507 | Kevin Cox | 12 | | N |
| Assistant TSL | 70202 | William Rowe | 0 | | N | Senior DPO | 70641 | Scott Fletcher | Sal | | N |
| Bosun | 62964 | Jeremy Schluter | 12 | | N | Senior Electrician | 71591 | James Collins | 12 | | N |
| Crane Op | 481038 | Richard Howard | 12 | | N | Senior Electronic T | 546346 | George Sheehan | 12 | | N |
| Deck Supervisor | 489590 | Clifton Pickle | 12 | | N | Senior Mechanic | 489847 | Tracy Stewart | 12 | | N |
| Derrickman | 486152 | Cody Evans | 12 | | N | Sr. ET | 507107 | Wesley Conn | 12 | | N |
| DPO | 999999 | Jerrith Day | 12 | | N | Subsea Eng | 491934 | Grant Sparling | 0 | | N |
| DPO | 586786 | Ryan Spirito | 12 | | N | Subsea Supv | 71629 | Patrick Lemieux | 0 | | N |
| Driller | 489588 | Delvin Allen | 12 | | N | Subsea Tech | 454807 | Dwayne Nevels | 12 | | N |
| Driller | 96573 | John Davis | 12 | | N | Toolpusher | 467032 | Thomas Cole | 12 | | N |
| DSL | 83532 | Donald Cason | 12 | | N | TSL | 475011 | Jonathan Shaw | Sal | | N |
| Electrician | 489686 | Dustin Emerson | 12 | | N | | | | | | |
| Electrician Supervi | 471764 | Charles Ballas | 0 | | N | | | | | | |
| ET | 480832 | Jason Kniesche | 12 | | N | | | | | | |
| Materials Administr | 451481 | David King | 12 | | N | | | | | | |
| Mechanic | 497092 | Charles Tobey | 12 | | N | | | | | | |
| Motor Man | 474913 | Perry Ward | 12 | | N | | | | | | |
| OIM | 69186 | Jon Mitchell | 0 | | N | | | | | | |
| Rig Administrator | 473687 | Toni Arnold | 0 | | N | | | | | | |
| Roughneck | 608548 | Dylan Pugh | 12 | | N | | | | | | |
| Roughneck | 581370 | Noah Vanderdoes | 12 | | N | | | | | | |

NO. OF DAYS SINCE LOST TIME ACCIDENT  138

**2 TOUR**  FROM  12:00  TO  00:00  INJURED

| CREW | EMPL. ID NO. | NAME | HRS | INIT-IAL | Y/N | CREW | EMPL. ID NO. | NAME | HRS | INIT-IAL | Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Assistant Crane Op | 545906 | Johnny Bledsoe | 12 | | N | Toolpusher | 478234 | Derrick Crawford | 12 | | N |
| Assistant Derrickm | 543066 | Kenny Alexander | 12 | | N | | | | | | |
| Assistant Driller | 455183 | Byron McClure | 12 | | N | | | | | | |
| Assistant Driller | 471863 | Dondrick Washington | 12 | | N | | | | | | |
| Assistant TSL | 96801 | Charles Gregory | Sal | | N | | | | | | |
| Crane Op | 562506 | James Little | 12 | | N | | | | | | |
| Deck Supervisor | 573526 | William Griffith | 12 | | N | | | | | | |
| Derrickman | 468704 | Tyler Burrow | 12 | | N | | | | | | |
| Driller | 474863 | Raymond Johnson | 12 | | N | | | | | | |
| Driller Aux | 471876 | Nathan Martin | 12 | | N | | | | | | |
| Electrician | 474826 | Dave Easter | 12 | | N | | | | | | |
| ERO | 585256 | Sean Ivens | 12 | | N | | | | | | |
| Lead Roughneck | 591706 | Joshua Kelly | 12 | | N | | | | | | |
| Motor Man | 488050 | Michael Lovering | 12 | | N | | | | | | |
| Roughneck | 000 | Michael Brady | 12 | | N | | | | | | |
| Roughneck | 595006 | Thomas Cooley | 12 | | N | | | | | | |
| Roughneck | 584646 | Russell Heaton | 12 | | N | | | | | | |
| Roustabout | 489815 | Chris Coleman | 12 | | N | | | | | | |
| Roustabout | 000000 | Austin Dupre | 12 | | N | | | | | | |
| Roustabout | 609027 | Brinnen Gordy | 12 | | N | | | | | | |
| Roustabout | 462816 | Dakota McClain | 12 | | N | | | | | | |
| Senior Mechanic | 465399 | James Oliver | 12 | | N | | | | | | |
| Subsea Eng | 473412 | Frank Elder | 12 | | N | | | | | | |
| Subsea Tech | 537406 | Nicholas LeBlanc | 12 | | N | | | | | | |

NO. OF DAYS SINCE LOST TIME ACCIDENT  138



**IADC OFFICIAL DAILY DRILLING REPORT FORM**
FORM PRODUCED UNDER
LICENSE FROM IADC

Generated by RIMDrill Drilling Information System
Copyright 2016 International Association of Drilling Contractors

EXHIBIT B

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHERYL CROCHET and ALEXANDRIA CROCHET, individually and on behalf of decedent, CHRISTOPHER CROCHET | CIVIL ACTION |
| | NO. |
| VERSUS | SECTION |
| SEADRILL AMERICAS, INC., ABC INSURANCE COMPANY, WEST NEPTUNE, FRANK'S INTERNATIONAL, LLC, DEF INSURANCE COMPANY, LLOG EXPLORATION COMPANY, LLC d/b/a LLOG BLUEWATER HOLDINGS, LLC, and XYZ INSURANCE COMPANY | JUDGE |
| | MAGISTRATE |

## LIST OF PARTIES

NOW INTO COURT, through undersigned counsel, come defendants Frank's International, LLC, LLOG Exploration Company, LLC, and Seadrill Americas, Inc., and according to Local Rule 3.2 for the Eastern District of Louisiana and 28 USC § 1447(b), submits the following list of parties involved in the captioned action.

1. Plaintiffs, Cheryl Crochet and Alexandria Crochet, individually and on behalf of decedent, Christopher Crochet
   Through their counsel of record,
   Jerome H. Moroux
   Scott M. Richard
   Broussard & David, LLC
   557 Jefferson Street
   P.O. Box 3524
   Lafayette, Louisiana 70502-3524

2. Defendants, Frank's International, LLC, LLOG Exploration Company, LLC, and Seadrill Americas, Inc.
   Through their counsel of record,
   Evans Martin McLeod
   Justin C. Warner
   Magdalini Galitou
   Phelps Dunbar LLP
   365 Canal Street, Suite 2000
   New Orleans, LA 70130-6534

1


EXHIBIT
4

Respectfully submitted,

**PHELPS DUNBAR LLP**


BY:     */s/ Evans Martin McLeod*
           Evans Martin McLeod, (Bar #24846)
           Justin C. Warner, (Bar #37349)
           Magdalini Galitou, (Bar #38473)
           Canal Place | 365 Canal Street, Suite 2000
           New Orleans, Louisiana 70130-6534
           Telephone: 504-566-1311
           Telecopier: 504-568-9130
           marty.mcleod@phelps.com
           justin.warner@phelps.com
           magdalini.galitou@phelps.com


ATTORNEYS FOR FRANK'S
INTERNATIONAL, L.L.C., LLOG
EXPLORATION COMPANY, LLC AND
SEADRILL AMERICAS, INC.

2

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| CHERYL CROCHET, et al. | SEADRILL AMERICAS, INC., et al. |

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jerome Moroux, Scott Richard, Broussard & David, 557 Jefferson St., Lafayette, LA 70502-3524, 337-233-2323

Attorneys *(If Known)*
E. Martin McLeod, Justin Warner, Magdalini Galitou, Phelps, 365 Canal St., New Orleans, LA 70130, 504-566-1311

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** — **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane — [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability — Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & — [ ] 367 Health Care/ | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | Slander — Pharmaceutical Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' — Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability — [ ] 368 Asbestos Personal | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 340 Marine — Injury Product | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| | [ ] 345 Marine Product — Liability | | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | Liability — **PERSONAL PROPERTY** | **LABOR** | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle — [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle — [ ] 371 Truth in Lending | | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 195 Contract Product Liability | Product Liability — [ ] 380 Other Personal | [ ] 720 Labor/Management Relations | [ ] 862 Black Lung (923) | |
| [ ] 196 Franchise | [ ] 360 Other Personal — Property Damage | [ ] 740 Railway Labor Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| | Injury — [ ] 385 Property Damage | [ ] 751 Family and Medical Leave Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| | [ ] 362 Personal Injury - — Product Liability | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| | Medical Malpractice | [ ] 791 Employee Retirement Income Security Act | | [ ] 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** — **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights — **Habeas Corpus:** | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 220 Foreclosure | [ ] 441 Voting — [ ] 463 Alien Detainee | | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment — [ ] 510 Motions to Vacate Sentence | | | [ ] 950 Constitutionality of State Statutes |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations — [ ] 530 General | | | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - — [ ] 535 Death Penalty | **IMMIGRATION** | | |
| [ ] 290 All Other Real Property | Employment — [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | [ ] 446 Amer. w/Disabilities - — [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | Other — [ ] 555 Prison Condition | | | |
| | [ ] 448 Education — [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [x] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1441; 43 USC 1349(b)(1)
Brief description of cause:
Removal

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

DATE
4/21/2022

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.